UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:23-cv-326-MOC

| LYUDMYLA R. SHOSTAK, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| Vs. | ) | **ORDER** |
| MARTIN O'MALLEY, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Plaintiff's complaint for review of decision by the Commissioner of Social Security. (Doc. No. 1). In support of her complaint, Plaintiff filed a Social Security Brief. (Doc. No. 5). Defendant filed a response brief, and Plaintiff filed a reply. (Doc. Nos. 6, 7). This matter is now ripe for disposition.

### I. Background

In June 2017, Plaintiff was in the sleeping compartment of her husband's truck when it was struck by another vehicle making a turn on the interstate. The collision threw Plaintiff to the floor of the cab, allegedly injuring her head, neck, shoulders, and spine. While MRIs of Plaintiff's spine and shoulder were normal, Plaintiff was subsequently diagnosed with concussion and post-traumatic migraine headaches. In December of 2017, Robert Ringel, MD, concluded that Plaintiff should not work other than sedentary activities, and that her subjective complaints were consistent with Dr. Ringel's findings.

In April of 2019, Gregory O'Shanick, MD, prepared a report based on his brain injury medicine evaluation of Plaintiff. Dr. O'Shanick's evaluation—conducted 21 months post-

1

injury—identified multiple neurocognitive abnormalities, neuromedical abnormalities, and neurobehavioral abnormalities caused by the June 2017 collision. Dr. O'Shanick concluded that Plaintiff was incapable of returning to productive, competitive employment despite her motivation to do so.

In September 2019, Plaintiff sat for a vocational/psychological evaluation by Dr. Justin King at Metropolitan Rehabilitation Services, Inc. The evaluation report listed eighteen diagnoses by Plaintiff's medical providers.[1] The report concluded that, based on Plaintiff's age, education, work experience, measured aptitudes, and interests and abilities, and taking into consideration the objective medical record and Plaintiff's residual physical, neurocognitive, and emotional functioning, Plaintiff was temporarily and totally disabled from any and all occupations that exist within the United States economy on a sustained and gainful basis. More specifically, Dr. King's report found that Plaintiff lacked the physical, neurocognitive, and emotional tolerances to return to work as a truck driver, and that retraining for more sedentary positions was contraindicated by Plaintiff's limited computer, clerical, mathematics, reading, and English language skills.

In September of 2020, Todd Morton, Ph.D. conducted a comprehensive clinical psychological evaluation on Plaintiff. Dr. Morton stated that Plaintiff may have experienced

---

[1] "1. Concussion; 2. Post-traumatic stress disorder; 3. Central Auditory Processing Disorder; 4. Post-traumatic Vision Syndrome, vergence changes; 5. Visual Vestibular Disorder; 6. Cognitive Communication Disorder; 7. Bilateral Temporomandibular Joint Disorder; 8. Bilateral greater occipital neuralgia; 9. Post-traumatic headaches; 10. Bilateral lower extremity hyperreflexia, possibly axial spine changes; 11. Impingement Syndrome of right shoulder; 12. Spinal Enthesopathy, Cervicothoracic region; 13. Low back pain, 14. Pin in right elbow; 15. Myalgia; 16. Cervical spondylosis at C5-C6; 17. Radiculopathy, cervical region; and 18. Lesion of ulnar nerve, left upper limb." (Doc. No. 5 at 6).

significant traumatic brain injury, which he found would cause moderate impairment in Plaintiff's ability to maintain her attention on a simple repetitive task for an extended period of time. While Plaintiff would be able to understand simple work instructions, Dr. Morton found that she would have moderate to severe impairment in her ability to consistently recall those instructions. Due to cognitive impairments caused by the accident, Dr. Morton concluded that Plaintiff would have mild to moderate impairment in her ability to maintain a pace of work that most employers require, as well as mild impairment in her relations with coworkers.

In September 2021, Stephen Burgess, MD, Ph.D., conducted an internal medicine examination on Plaintiff. Dr. Burgess concluded that Plaintiff's ability to perform work activities like bending, stooping, lifting, walking, crawling, squatting, carrying, traveling, pushing, and pulling was mildly and occasionally moderately impaired.

In October 2021, Rita A. Weatherford, MA, conducted a comprehensive clinical psychological evaluation of Plaintiff. Ms. Weatherford concluded that Plaintiff's ability to tolerate stress and pressure associated with work activities may be slightly-to-moderately impaired due to Plaintiff's mild neurocognitive disorder caused by her traumatic brain injury.

On January 10, 2020, Plaintiff filed a Title II application for a period of disability and disability insurance benefits alleging disability beginning with the June 28, 2017, collision. Plaintiff's insured status for Title II benefits expired on September 30, 2022. An online video hearing on Plaintiff's application was held before Administrative Law Judge ("ALJ") Charles R. Howard on February 2, 2023. After that hearing, the ALJ concluded that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act from June 28, 2017, through September 30, 2022, the date Plaintiff was last insured. Specifically, the ALJ found that Plaintiff

had the residual functional capacity to perform light work with no climbing ladders, ropes, or scaffolds and no exposure to hazards. Mentally, the ALJ found that Plaintiff could understand, remember, and carry out simple instructions; maintain concentration for simple tasks; adapt to routine change; and occasionally interact with the public. The agency's Appeals Council subsequently denied review of the ALJ's decision, making the ALJ's findings the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff complained to this Court that the Commissioner's final decision was error. See 42 U.S.C. § 405(g). Specifically, Plaintiff argues that the ALJ improperly "disregarded substantial medical evidence." (Doc. No. 5 at 2). Plaintiff objects to the ALJ's conclusion that Plaintiff's statements about the intensity, persistence, and limitations imposed by her symptoms are negated by her ability to travel to Ukraine to see her family and her apparently inconsistent use of an interpreter.

The ALJ also found that Plaintiff "managed her household income, paid bills, performed personal care, exercised, walked, and visited grandchildren . . . attended church, ate in restaurants, grocery shopped and went out with friends." But Plaintiff contends she told Ms. Weatherford that she was unable to cook, had stopped taking care of her grandchildren, and often missed church. The ALJ likewise found that the Metropolitan Rehabilitation Services report was based on Plaintiff's self-reports, whereas Plaintiff contends it was based on three days of testing, examination, and evaluation. Finally, the ALJ's decision recites that the ALJ asked the vocational expert whether jobs existed in the national economy for an individual with Plaintiff's age, education, work experience, and residual functional capacity. The vocational expert testified that the individual would have been able to perform the requirements of certain representative

4

occupations. But the ALJ's decision failed to acknowledge that when the vocational expert considered whether Plaintiff could perform those jobs if she lacked the mental ability to remember instructions, the vocational expert testified that this would eliminate all work opportunities.

## II.     Legal Standard

This Court has jurisdiction over Plaintiff's social security appeal under 42 U.S.C. § 405(g). That statute limits this Court's review of the Commissioner's final decision to "whether the findings of the [ALJ] are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The substantial evidence standard requires that the Commissioner's decision be supported by more than a scintilla of evidence, but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971). More specifically, the ALJ's findings need only be supported by "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

Applying the substantial evidence standard, a Court may not re-weigh the evidence, make credibility determinations, or substitute its own judgment for that of the Commissioner. See Hays, 907 F.2d at 1456; Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, even where "substantial evidence would have supported an opposite decision," the Court may not reverse the Commissioner so long as the Commissioner's conclusion is also supported by substantial evidence. Dunn v. Colvin, 607 Fed. Appx. 264, 274 (4th Cir. 2015) (quoting Clarke v. Bowen, 843 F.2d 271, 272–73 (8th Cir. 1988)). Thus, the substantial evidence standard assumes "a zone of choice within which the decisionmakers can go either way, without interference by the

5

Case 1:23-cv-00326-MOC    Document 9    Filed 04/26/24    Page 5 of 10

courts." Id. So long as substantial evidence supports the Commissioner's decision, it must be affirmed. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

The Social Security Act ("SSA") defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2). To qualify for disability insurance benefits ("DIB") under Title II of the SSA, 42 U.S.C. §§ 416(i) and 423, an applicant must: (1) meet the insured status requirements of these sections; (2) be under retirement age; (3) file an application for disability insurance benefits; and (4) be under a "disability" as defined in the SSA.

The Commissioner's regulations establish a five-step "sequential review" process to determine whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim pursuant to the following five-step analysis:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

2. An individual who does not have a "severe impairment" will not be found to be disabled;

3. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

4. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

5. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)–(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

### III. Discussion

Plaintiff claims that the Commissioner's decision was not supported by substantial evidence because the ALJ disregarded substantial medical evidence in determining Plaintiff's residual functional capacity. Plaintiff's challenge fails. The Commissioner's decision—that Plaintiff retained the residual functional capacity to perform a restricted range of light work with no climbing ladders, ropes, or scaffolds and no exposure to hazards—is supported by substantial evidence.

Plaintiff maintains that the ALJ's residual functional capacity determination was impermissibly based on her travel to Ukraine and inconsistent use of an interpreter. But that is simply untrue. Instead, the ALJ's determination was based on portions of medical records which contradict Plaintiff's account of the severity of her injuries. Immediately following the truck crash, for example, Plaintiff apparently displayed normal alertness, normal mental status, no

7

focal neurologic deficit, and no painful distracting injuries. (Doc. No. 3, Tr. at 402). The ALJ likewise took notice of medical records from August 9, 2017, indicating that while Plaintiff complained of concussion symptoms, she was cleared to return to work without restrictions on August 18. (Id. at 444). And while subsequent evaluations of Plaintiff's cervical spine indicated "significant impairments of strength, posture, and range of motion," (Id. at 577), Dr. Ringer's December 11, 2017, evaluation included no such findings, concluding that Plaintiff could return to sedentary work at that time. (Id. at 543). Dr. Ringer's March 9, 2018, report is especially supportive of the Commissioner's decision:

> Ms. Shostak follows up today for neck and left arm pain. She says she is not doing any better and is still having issues (Id. at 652) . . . The imaging for this patient has been fairly unremarkable (Id. at 655) . . . As has been previously discussed, I am concerned by her long delay between injury, her first visit and her subsequent visit, approximately 6 months after het initial injury as well as her multiple new complaints at each visit and seeking out multiple providers. She has also declined several of my treatment recommendations . . . I see no clear reason why she cannot resume work based on the findings I have at this point. (Id.)

The record support is similarly mixed regarding Plaintiff's claims of visual hallucinations, photophobia, hearing loss, imbalance, and chest pain. Compare (Id. at 701) with (Id. at 880). The same is true of Plaintiff's alleged memory loss. Compare (Id. at 883) with (Id. at 664, 882, 888). In any case, Plaintiff told consultative psychological examiner Rita Weatherford that her alleged inability to work stemmed from physical, not mental, limitations. (Id. at 894).

Plaintiff also complaints that the ALJ's decision discredited the psychological evaluation performed by Dr. Justin King of Metropolitan Rehabilitation Services, Inc. Specifically, Plaintiff claims that the ALJ improperly discredited Dr. King's findings as based on Plaintiff's self-reports, when in fact those findings were based on three days of testing, examination, and evaluation. But, as the Commissioner's brief in opposition points out, Dr. King's report did rely

8

in part upon Plaintiff's self-reports, as well as the questionable findings of Dr. O'Shanick (which were themselves based on Plaintiff's self-reports). Ultimately, the ALJ concluded that Dr. Barry Rudnick's psychiatric evaluation—which reached results contrary to Dr. King's evaluation—was more persuasive. That is all the Commissioner must show to satisfy the substantial evidence standard. See Lusk v. Astrue, No. 1:11 cv-196-MR, 2013 WL 498797, at *4 (W.D.N.C. Feb. 11, 2013). The Court is not at liberty to re-weigh the evidence and resolve conflicts between contrary physician opinions. Hays, 907 F.2d at 1453, citing King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976).

Finally, the ALJ credited evidence of Plaintiff's daily activities in support of his assessment of Plaintiff's residual functional capacity. Specifically, Plaintiff told Rita Weatherford that she was able to wash dishes, do laundry, take out the trash, shop for groceries, care for her dogs, and attend church. (Id. at 881, 895). The ALJ is entitled to consider evidence of Plaintiff's daily activities in assessing the credibility of their subjective complaints. See Mastro v. Apfel, 270 F.3d 171, 179 (4th Cir. 2001). Here, that evidence supports the ALJ's decision regarding Plaintiff's residual functional capacity.

For the foregoing reasons, the Court concludes that the ALJ's residual functional capacity assessment—and thus the Commissioner's final decision—was supported by substantial evidence. True, Plaintiff adduces evidence that cuts against the ALJ's findings. But the ALJ is not required to credit each and every piece of evidence. Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865–66 (4th Cir. 2014). Nor must the ALJ's decision be supported by a preponderance of the evidence. Instead, evidentiary support for the ALJ's decision need only be greater than a mere scintilla. Plaintiff bore the burdens of production and persuasion to demonstrate residual

9

functional capacity, and they failed to carry that burden here. See 20 C.F.R. §§ 404.1512(c) & 416.912(c); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004); Plummer v. Astrue, No. 5:11-cv-00006, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) (Memorandum and Recommendation), adopted, 2012 WL 1858844 (May 22, 2102), aff'd, 487 F. App'x 795 (4th Cir. Nov. 6, 2012).

## ORDER

**IT IS, THEREFORE, ORDERED** that the decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED**. This action is **DISMISSED** with prejudice.

The Clerk's office is respectfully instructed to terminate the pending motions in Docket Numbers 5 and 6 in accordance with this Order.

**SO ORDERED**.

Signed: April 26, 2024

Max O. Cogburn Jr.
United States District Judge

10

Case 1:23-cv-00326-MOC   Document 9   Filed 04/26/24   Page 10 of 10